IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 11-cv-00081-LTB-BNB

BRENDA M. LOPEZ,

 Plaintiff,

v.

SUNCOR ENERGY (U.S.A.) INC., a Delaware corporation; and SUNCOR ENERGY SERVICES INC.,

 Defendants.
_____

### ORDER
_____

  This matter is before me on Defendants Suncor Energy (U.S.A.) Inc., and Suncor Energy Services Inc.'s Partial Motion to Dismiss the Amended Complaint **[Doc #20]**. Pursuant to Fed. R. Civ. P. 12(b)(6), Defendants move to dismiss Plaintiff Brenda M. Lopez's following claims: (1) the claims that Plaintiff's failure to receive a promotion in August 2008 and her reassignment to a different work site, respectively, violated Title VII, the Age Discrimination in Employment Act, and Colo. Rev. Stat. § 24-34-402; (2) the retaliation claim under the Equal Pay Act; (3) the Employee Retirement Income Security Act claim; and (4) the Family and Medical Leave Act interference claim. After consideration of the parties' arguments, and for the reasons stated below, I GRANT Defendant's motion in part, and I DENY it in part.

### I. Background

  Plaintiff worked for Defendants at their Commerce City location as a procurement specialist in supply chain management from April 1, 2007, until she was terminated on

September 9, 2009. Plaintiff filed her original complaint on January 12, 2011, alleging four claims against the present Defendants and Suncor Energy Inc., a Canadian company.

On February 25, 2011, the Defendants filed their first partial motion to dismiss pursuant to Fed. R. Civ. P 12(b)(6). Plaintiff filed her response to that motion on April 14, 2011, arguing that it should be denied or, alternatively, that she should be granted the opportunity to file an amended complaint. I granted Plaintiff's motion to file an amended complaint. On April 27, 2011, Plaintiff filed her amended complaint, which dropped the Canadian Suncor Energy, Inc., and kept the present Defendants. Plaintiff alleges the following in her amended complaint:

Plaintiff is a 51 year-old woman. Plaintiff and her supervisors, David Bean, Glen Smith, and Curtiss Rigsby, were joint employees of Defendants. Throughout her employment, Plaintiff received very positive performance reviews, pay increases, and the full amount of eligible bonuses. She was qualified for her position and satisfactorily performed her duties throughout her employment with Defendants. Smith and Rigsby were pleased with Plaintiff's performance as a band 10 procurement specialist.

In or around August 2008, Plaintiff applied for but did not receive a promotion for which she was qualified. Smith refused to consider Plaintiff's application for the position, stating that he "did not see her in that position." Defendants hired Perry Doughty, a white male under 40 years old with less experience. Smith introduced Doughty as "the new face of Supply Chain." Plaintiff filed an internal complaint on August 19, 2008, alleging that Smith harassed her and discrimination because she was not promoted. Her internal complaint also alleged unequal pay.

As a result of her internal complaint, Smith and Rigsby promoted Plaintiff from salary band 9 to salary band 10 within the same procurement specialist position. But despite the

increase in pay, on information and belief, Plaintiff was still paid less than men performing comparable work from 2007 to the date of her termination. On information and belief, Ken Burton, Barron Robbins, and Perry Doughty were procurement specialists and were paid more than Plaintiff for the duration of her employment. Those three employees are white males, under 40, and less qualified than Plaintiff, and their jobs required skill, effort, and responsibility equal with, and working conditions similar to, Plaintiff's job.

Defendants' adverse employment actions against Plaintiff commenced immediately after Plaintiff filed her internal complaint. During the investigation of that complaint, "Defendants treated Plaintiff differently and systematically sought to ostracize her." At the annual vendor meeting that took place during the investigation, Peter Higgenbottom, one of Smith's peers, told a group of vendors that "Brenda doesn't see things the way we do."

Then, in early 2009, Plaintiff's supervisor instructed her to "go to the Orchard Falls location to see if there was any work to support the Supply and Marketing groups at that location." Plaintiff spent a few hours at Orchard Falls and reported to Smith that there was no work there. Plaintiff never received a formal reassignment to Orchard Falls, and her job title remained the same. Throughout her employment with Defendants, Plaintiff did not perform any work for Orchard Falls. On information and belief, there is nothing in Plaintiff's personnel file or in Defendants organizational chart or human resource system indicating that she was ever transferred to Orchard Falls. Plaintiff's telephone number and cubicle assignment remained at the Commerce City location. Defendants created a fictional position at Orchard Falls so that a subsequent elimination of the position as part of a workforce reduction could serve as a pretext for Plaintiff's termination, which was actually based on her national origin, age, and gender.

Defendants also denied Plaintiff her right to enroll in individual coverage under the group health insurance plan. Defendants were the sponsors and administrators of certain health and welfare benefits in which Plaintiff was eligible to participate or was a participant. Plaintiff requested enrollment as a participant in various plans, but Defendants denied her request, requiring her to instead be covered as a "spouse" under her husband's coverage through his employment with Defendants. This imposed an additional cost to Plaintiff.

In March 2009, Plaintiff went on medical leave under the Family and Medical Leave Act to obtain medical care for an injury. Defendants approved her leave pursuant to company policy. Plaintiff remained on leave for six months, to September 9, 2009. While Plaintiff was on leave, Defendants harassed her at home and threatened to terminate her if she did not return to work immediately. During her leave, Defendants also sought and obtained information about Plaintiff's medical condition directly from her medical care providers without her knowledge or consent. In May or June 2009, Emily Mill, one of Defendants' human resource employees, called Plaintiff's treating physician, Dr. Sharp, and requested certain information about Plaintiff's treatment and condition without Plaintiff's authorization. Plaintiff's supervisor and Defendants' human resource representatives then contacted Plaintiff and threatened to terminate her if she did not return to work.

Plaintiff returned to work on September 9, 2009. She was terminated that day. Defendants told her that she was being terminated as part of a workforce reduction because her "position at Orchard Falls had been eliminated." Plaintiff was the only Hispanic woman working as a procurement specialist for Defendants in Colorado. On information and belief, Defendants terminated no other procurement specialists in Colorado. Defendants hired a less

qualified, younger white male to replace Plaintiff almost immediately after they terminated her.

Incorporating the above factual averments, Plaintiff's amended complaint ostensibly alleges four claims. But even after amending her first complaint, the exact number of Plaintiff's claims is difficult to ascertain because the "four" denoted claims each appears to encompass numerous discrete causes of action. Because Defendants attack the individual actions subsumed within each claim, rather than an entire claim, I attempted to sequester the distinct actions and will present each action individually and under its appurtenant claim. Plaintiff's amended complaint alleges the following four claims, in which I explicate the individual actions:

Firstly, Defendants intentionally discriminated against her based on her gender and national origin in violation of Title VII, 42 U.S.C. § 2000e, and C.R.S. § 24-34-402 (the "First Claim"), when they failed to promote her, reassigned her, and terminated her. Hence, this First Claim has six actions: three discrete adverse employment actions involving two separately protected classifications–gender and national origin. This claim further alleges that at least one of Defendants' higher management officials "acted with malice or reckless indifference to Plaintiff's federally protected rights" and that Defendants did not in good faith try to comport with the law.

Secondly, Defendants violated the Equal Pay Act of 1963, 29 U.S.C.A. § 206(d) (the "EPA"); 29 C.F.R. §§ 1620, 1621; and § 510 of the Employee Retirement Income Security Act, 29 U.S.C. § 1140 ("ERISA") (together, the "Second Claim"). This Second Claim contains three actions: two under the EPA and one under ERISA. Defendants violated the EPA by "willfully fail[ing] and refus[ing] to pay Plaintiff equal pay as paid to male employees for performing equal work" and by retaliating against Plaintiff for exercising her EPA rights. Defendants violated

ERISA by "willfully discharg[ing], expell[ing], and discriminat[ing] against Plaintiff for exercising her rights under Defendants' employee benefits plan."

Thirdly, Defendants violated the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601-2654 (the "Third Claim"), in two ways, thereby generating two actions. They knowingly interfered with Plaintiff's FMLA rights, and they knowingly retaliated and discriminated against her for exercising those rights.

Fourthly, Defendants discriminated against Plaintiff based on her age in violation of the Age Discrimination in Employment Act, 29 U.S.C.A. §§ 621-634; 59 C.F.R. §§ 1625-27, as amended (the "Fourth Claim"), when they refused to promote her; reassigned her; and terminated her). This Fourth Claim thus contains three discrete actions.

On May 26, 2011, Defendants filed their partial motion to dismiss Plaintiff's amended complaint pursuant to Rule 12(b)(6). Their motion has two main thrusts. The first argues that the actions in the First and Fourth Claims based on Defendants' failure to promote her in August 2008 are time barred because Plaintiff did not make a timely filing and should therefore be dismissed. The second thrust is that the following claims should be dismissed under Rule 12(b)(6) for lack of factual support: the actions in the First and Fourth Claims related to the "reassignment"; the retaliation action under the EPA in the Second Claim; the ERISA action in the Second Claim; and the FMLA interference action in the Third Claim. To be clear, then, Defendants' motion does not seek to dismiss Plaintiff's following actions: those related to her termination, her unequal pay action, or the FMLA retaliation action.

## II. Standard of Review

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly,* 550 at 556). The Tenth Circuit has interpreted "plausibility" in this context to "refer to the scope of allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (internal quotations omitted). It follows, then, that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S.Ct. at 1949. Rather, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombley*, 550 U.S. at 555. When deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must assume the truth of all well-pleaded facts in the complaint and draw all reasonable inferences therefrom in the light most favorable to the plaintiff. *Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007). Legal conclusions, however, do not receive this treatment. *Iqbal*, 129 S.Ct. at 1950.

## III. Analysis

I address the portions of Defendants' motion individually, beginning with the portion seeking to dismiss those actions stemming from the August 2008 promotion that Plaintiff did not receive.

### *A. The Failure to Promote Actions in the First and Fourth Claims*

Defendants first argue that Plaintiff's actions in her First and Fourth Claims related to their failure to promote her in August 2008 should be dismissed as time barred. For the reasons below, I grant this portion of Defendants' motion.

To bring a civil suit under Title VII or the ADEA, a plaintiff must have filed an administrative claim with the Equal Employment Opportunity Commission (the "EEOC"), within 300 days of the alleged discriminatory action. *See Aronson v. Gressly*, 961 F.2d 907, 911 (10th Cir. 1992); *Haynes v. Level 3 Communications LLC*, 456 F.3d 1215, 1222 (10th Cir. 2006). Similarly, to bring a claim under C.R.S. § 24-34-402, a plaintiff must have filed a charge with the Colorado Civil Rights Division (the "CCRD"), within six months after the unfair or discriminatory employment action. *See* C.R.S. §§ 24-34-402, 403; *see Quicker v. Colo. Civil Rights Comm'n*, 747 P.2d 682, 683 (Colo. App. 1987).

Plaintiff concedes that she failed to file timely notices with the EEOC and CCRD and that her claims should be dismissed as time barred. Accordingly, I grant this portion of Defendants' motion. I note, however, that Plaintiff may allege the facts surrounding the promotion as background evidence in support of her timely claims. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 102 (2002) (explaining that the timeliness requirement does not bar an employee from using time-barred acts as "background evidence to support a timely claim").

### *B. The "Reassignment" Actions in the First and Fourth Claims*

Defendants move to dismiss the three actions–national origin, gender, and age–based on the purported reassignment. Defendants contend that the "reassignment" did not constitute an

adverse employment action capable of undergirding an independent action under Title VII and the ADEA.  For the reasons below, I agree with Defendants and accordingly grant this portion of Defendants' motion.

"Only 'acts that constitute a significant change in employment status, such as . . . reassignment with significantly different responsibilities' . . . will rise to the level of an adverse employment action."  *Haynes,* 456 F.3d at 1222 (quoting *Dick v. Phone Directories Co., Inc.*, 397 F.3d 1256, 1268 (10th Cir. 2005)). Plaintiff alleges that her job title, phone number, office location, and job functions remained the same after Defendants told her to go see whether the Orchard Falls location had any work for her and that she never performed work for that office.

Taking these factual contentions as true, as I must, they demonstrate that the reassignment was not an adverse employment action.  Indeed, Plaintiff explicitly alleges that she "never received a formal reassignment to a marketing position at Orchard Falls" and that the reassignment was "fictional."  Plaintiff essentially wants the reassignment to be at once real and illusory–real to constitute its own adverse employment action under Title VII and the ADEA, yet simultaneously illusory to support her wrongful discrimination claims.  To be sure, Plaintiff can plead in the alternative.  *See* Fed. R. Civ. P 8(d)(2).  But here, Plaintiff does not allege facts sufficient to show a reassignment that wrought "significantly different responsibilities" plausibly occurred.  *See Haynes*, 456 F.3d 1222.

The only allegations that might support an actual reassignment are that Smith told Plaintiff to go to Orchard Falls, that she was there for a "few hours," and that she was told she was fired because her position at Orchard Falls had been terminated.  But these are insufficient because "mere inconvenience or alteration of job responsibilities will not due."  *Id.* (internal

quotations omitted). Even assuming, *arguendo,* that these facts sufficiently alleged a reassignment, they still fall short of showing that Plaintiff's responsibilities changed significantly. Thus, the reassignment as alleged does not constitute an adverse employment action capable of undergirding an independent action under Title VII or the ADEA. I therefore grant this portion of Defendants' motion and dismiss those three actions. Because I agree with Defendants' that the reassignment does not constitute an independent adverse action, I decline to address Defendants' subsequent argument regarding the reassignment.

I do not rule or comment upon any part of Plaintiff's wrongful termination claims, as Defendants' motion does not seek their dismissal. I note, however, that my ruling on these actions does not affect Plaintiff's ability to use the reassignment allegations as evidence of wrongful termination.

### *C. The Retaliation Action Under the EPA in the Second Claim*

Defendants next argue that Plaintiff's retaliation action under the EPA in the Second Claim should be dismissed under Rule 12(b)(6). For the reasons below, I disagree and therefore deny this portion of Defendants' motion.

The EPA prohibits pay disparity between men and women who perform substantially the same job in basically the same conditions. *See* 29 U.S.C. § 206(d); *see also Mickelson v. New York Life Ins., Co.*, 460 F.3d 1304 (10th Cir. 2006). Additionally, it proscribes "discharg[ing] or in any other manner discriminat[ing] against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter . . . ." 29 U.S.C. § 215(a)(3). To state a prima facie case of retaliation, a plaintiff is required to demonstrate the following: "(1) that [she] engaged in protected opposition to discrimination, (2)

10

that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Mickelson*, 460 F.3d at 1315 (quoting *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006)) (internal quotations omitted).

Plaintiff's amended complaint with respect to this action is facially plausible. Plaintiff avers that she filed an internal complaint with Defendants on August 19, 2008, alleging unequal pay therein. This shows the first element of a prima facie case because filing the internal complaint constituted a protected activity. *See McCue v. State of Kan., Dept. of Human Res.*, 165 F.3d 784, 789 (10th Cir. 1999) ("The protected activity in which [the plaintiff] engaged was filing an internal complaint of harassment . . . .").

Plaintiff also sufficiently alleges the second element of the prima facie case. The Tenth Circuit "liberally defines" "adverse employment action" and "takes a case-by-case approach to determining whether a given employment action is 'adverse.' " *Gunnel v. Utah Valley State Coll.*, 152 F.3d 1253, 1264 (10th Cir. 1998). Plaintiff alleges that Defendants treated her differently and systematically sought to ostracize her immediately after she filed the August 2008 complaint. In one instance during the investigation of her internal complaint, one of Defendants' employees told a group of vendors that "[Plaintiff] doesn't see things the way we do." Additionally, Plaintiff avers that Defendants created a fictional position at Orchard Falls in order to terminate her, which Defendants subsequently did on September 9, 2009. These are more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 129 S.Ct. at 1949. These are factual allegations–albeit lacking in specificity and detail in some instances. As such, they must be assumed as true. *Teigen*, 511

11

F.3d at 1078.

Taken as true, then, and with *Gunnel*'s principles in mind, these allegations show plausible material adverse actions by Defendants because both termination and co-worker hostility or retaliatory harassment can constitute adverse actions. *See Annet v. Univ. of Kan.*, 371 F.3d 1233, 1237 (10th Cir. 2004) ("An adverse employment action constitutes a significant change in employment status, such as hiring, *firing*, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.") (internal quotations omitted) (emphasis added); *Gunnel*, 152 F.3d at 1264 (holding that "co-worker hostility or retaliatory harassment, if sufficiently severe, may constitute 'adverse employment action' for purposes of a retaliation claim") (internal quotations omitted). *Twombley*'s plausibility requirement is not a probability requirement; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the alleged conduct. 550 U.S. at 556. Plaintiff raises that reasonable expectation here.

Finally, Plaintiff also alleges a plausible causal nexus between her internal complaint and the materially adverse actions described above. Her amended complaint states that the discrimination and ostracization commenced in August 2008, immediately after she filed her internal complaint, and continued through the date of her termination. The timing of alleged material adverse actions is important because "the closer it occurred to the protected activity, the more likely it will support a showing of causation." *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999). The Tenth Circuit has held that less than a one month period between the protected activity and the adverse action may, by itself, establish causation. *See Anderson*, 181 F.3d at 1179 (citing *Ramirez v. Okla. Dept. of Mental Health*, 41 F.3d 584, 596

(10th Cir. 1994), *overruled on other grounds*, *Ellis. v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1194-95 (10th Cir. 1998)). At this stage, the question of "plausibility" refers not to whether the allegations are likely to be true; the court must assume them to be true. *Teigen*, 511 F.3d at 1078. Rather, "[t]he question is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law." *Christy Sports, LLC v. Deer Valley Resort Co., Ltd.*, 555 F.3d 1188, 1192 (10th Cir. 2009) (citing *Robbins*, 519 F.3d at 1247). Framed this way, under the Tenth Circuit's jurisprudence Plaintiff's amended complaint states a plausible inference of a causal connection for her retaliation action under the EPA. I therefore deny this portion of Defendants' motion.

### *D. The ERISA Action in the Second Claim*

Defendants also argue that Plaintiff's ERISA action should be dismissed under Rule 12(b)(6). For the reasons below, I disagree with Defendants and therefore deny this portion of their motion.

Broadly, § 510 of ERISA, 29 U.S.C. § 1140, proscribes changes in employment status based upon benefit motivations. *See Garratt v. Walker*, 164 F.3d 1249, 1256 (10th Cir. 1998). A prima facie case of a § 510 violation requires establishing "(1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled." *Maez v. Mountain States Tel. & Tel., Inc.*, 54 F.3d 1488, 1504 (10th Cir. 1995) (quoting *Gavalik v. Cont'l Can Co.*, 812 F.2d 834, 852 (3d Cir. 1987)). "An employee may rely upon direct or indirect proof that an adverse employment action 'was motivated by an intent to interfere with employee benefits protected by ERISA.'" *Phelps v. Field Real Estate Co.*, 991 F.2d 645, 649 (10th Cir. 1993). The employee is not required to

show that the employer's sole motivation was to interfere with employee benefits; she need only show that it was a motivating factor. *Garratt*, 164 F.3d at 1256.

This action is also facially plausible and thus withstands a motion to dismiss pursuant to 12(b)(6). The amended complaint shows prohibited employer conduct by alleging that Defendants denied Plaintiff her right to enroll in individual coverage under the group health insurance plan and instead required her to be enrolled as a spouse under her husband's coverage, imposing an additional cost to her. It also specifically alleges that Defendants denied Plaintiff's request to be enrolled as a participant under the plans and that she was terminated for exercising her rights thereunder. These allegations do not "encompass a wide swath of conduct, much of [which is] innocent." *See Robbins*, 519 F.3d at 1247. Rather, they specifically describe conduct that, if true, would violate § 510. *See* 29 U.S.C. § 1140 (enumerating types of unlawful conduct). Again, *Twombley*'s plausibility requirement is not a probability requirement. 550 U.S. at 556. Indeed, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable." *Id.*

The amended complaint also alleges facts sufficient to show the second element of a prima facie § 510 action–that Defendants were motivated by an intent to interfere with Plaintiff's ERISA protected benefits. Plaintiff avers, in effect, that Defendants' refusal to enroll her as an individual under the group health insurance plan saved them money by shifting the cost of coverage to her. "[A] trier of fact could find that that a motivating factor behind the employer's terms was to discriminate in favor of himself and against the employee in order to save the cost of the employee's participation in the plan." *Garratt*, 164 F.3d at 1255. Similarly, a trier of fact could find that a motivating factor behind the employer's termination was Plaintiff's assertion of

rights under the plan. *See id.* Plaintiff need not demonstrate that Defendants' sole motivation was to interfere with her benefits–only that it was a motivating factor. *Id.* at 1256.

Plaintiff also sufficiently alleges that the conduct interfered with the attainment of rights to which she was entitled, the third element of the prima facie § 510 action. She avers that she was a participant, or was eligible to participate, in one or more of the benefit plans Defendants established, administered, and maintained. Because these are well-pleaded facts, I must assume their truth and draw all reasonable inferences therefrom in a light most favorable to Plaintiff. *Teigen*, 511 F.3d at 1078. I conclude that these allegations demonstrate that Plaintiff possessed an entitled right. I therefore deny this portion of Defendants' motion.

### *E. The FMLA Interference Action in the Third Claim*

Finally, Defendants seek to dismiss the FMLA interference action in Plaintiff's Third Claim under Rule 12(b)(6). For the reasons below, I disagree with Defendants and accordingly deny this portion of their motion.

An employer may not "interfere with, restrain, or deny the existence of or the attempt to exercise, any right provided under [the FMLA]." *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1180 (10th Cir. 2006) (quoting 29 U.S.C. § 2615(a)(1)). To prevail on an interference action, the plaintiff must show (1) that she was entitled to FMLA leave, (2) that some adverse action by the employer interfered with her right to take that leave, and (3) that the employer's action was related to the exercise or attempted exercise of her FMLA rights. *Id.* Under the interference theory, "a denial, interference, or restraint of FMLA rights is a violation regardless of the employer's intent." *Id.* (quoting *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 877 (10th Cir. 2004)).

Plaintiff's amended complaint presents enough factual allegations to reasonably infer that Defendants interfered with her FMLA rights. First, while Plaintiff does not explain in detail the cause for her FMLA leave–stating only is was to obtain medical care for an injury–she alleges that Defendants approved her leave pursuant to their policies and the FMLA. I must view these facts in a light most reasonable to Plaintiff. *Teigen*, 511 F.3d at 1078. Plaintiff thus satisfies the first element of the action.

The amended complaint also alleges factual content that allows me to draw the reasonable inference that the defendant interfered with Plaintiffs's right to FMLA leave, the second element of the interference action. It avers that Defendants harassed Plaintiff at home during her leave and that they threatened to terminate her if she did not return to work immediately. It further avers that Defendants sought and obtained Plaintiff's private medical information from her medical care providers, including her doctor, Doctor Sharp, without her knowledge or consent. Then, after obtaining that information, Defendants contacted her and again threatened her with termination. These are facts, not conclusions, and they therefore must accepted as true. *See Teigen*, 511 F.3d at 1078. And though lacking in detail, these allegations do not "encompass a wide swath of conduct, much of [which is] innocent" that would be insufficient. *See Robbins*, 519 F.3d at 1247.

Defendants contest this element of the claim on other grounds too. They argue that "it is entirely plausible" that Defendants did not interfere with Plaintiff's FMLA leave because Plaintiff began her FMLA leave in March; FMLA provides for 12 weeks of leave; Plaintiff was approved for and took six months of leave; and the contact between Defendants and Plaintiff or Plaintiff's physician is alleged to have occurred in May or June. Therefore, Defendants argue, it

is entirely plausible that any such contact occurred after Plaintiff exhausted her 12 weeks of FMLA leave. This argument is unavailing–namely for the following reason: because these are allegations are facts, and must therefore be viewed in a light most favorable to the Plaintiff, *see Teigen*, 511 F.3d at 1078, it is also entirely plausible that the alleged interference occurred during the 12 weeks of FMLA leave. This means that Plaintiff has met her burden to withstand a 12(b)(6) motion under *Twombley* and *Iqbal*.

Thirdly, the last element is sufficiently alleged. Allegedly seeking Plaintiff's medical information while she was on leave and threatening to terminate her if she did not return to work are clearly related to Plaintiff's exercise of her FMLA rights.

The allegations appertaining to the FMLA interference claim are not "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 129 S.Ct. at 1949. Instead, they contain enough facts and specificity to "nudge[] the[] claim[] across the line from conceivable to plausible." *Robbins*, 519 F.3d at 1247 (internal quotations omitted). I therefore deny this portion of Defendants' motion.

## IV. Conclusion

For the reasons above, IT IS ORDERED that Defendants' Partial Motion to Dismiss the Amended Complaint **[Doc #20]** is GRANTED in part and DENIED in part as follows:

1) The portion of Defendants' motion seeking to dismiss Plaintiff's actions in her First and Fourth Claims that the failure to receive the August 2008 promotion violated Title VII, the Age Discrimination in Employment Act, and Colo. Rev. Stat. § 24-34-402, is GRANTED;

2) The portion of Defendants' motion seeking to dismiss Plaintiff's actions in her First and Fourth Claims that her reassignment to a different work site violated Title VII, the Age

Discrimination in Employment Act, and Colo. Rev. Stat. § 24-34-402, is GRANTED;

    3) The portion of Defendants' motion seeking to dismiss Plaintiff's retaliation action under the Equal Pay Act in the Second Claim is DENIED;

    4) The portion of Defendants' motion seeking to dismiss Plaintiff's Employee Retirement Income Security Act action in the Second Claim is DENIED; and

    5) The portion of Defendants' motion seeking to dismiss Plaintiff's Family and Medical Leave Act interference action in the Third Claim is DENIED.

Date: August __29__, 2011 in Denver, Colorado.

BY THE COURT:

    s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE