IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 11-cv-00081-LTB-BNB

BRENDA M. LOPEZ,

Plaintiff,

v.

SUNCOR ENERGY (U.S.A.) INC., a Delaware corporation, and
SUNCOR ENERGY SERVICES INC.,

Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
## AND ORDER

_____

This matter arises on:

(1)     **Defendants' Motion for Reasonable Expenses** [Doc. # 139, filed 6/14/2012]

(the "Motion for Reasonable Expenses"); and

(2)     **Second (Amended) Motion to Enforce Attorney's Lien** [Doc. # 149, filed

7/23/2012] (the "Motion to Enforce Lien") by Kazazian & Associates LLC ("K&A").

The Motion for Reasonable Expenses [Doc. # 139] is granted, and the defendants are

awarded $10,990.80 as reasonable expenses incurred in defending against Plaintiff's Motion to

Compel Discovery and Disclosures [Doc. # 83] ("Plaintiff's Motion to Compel") and in pursuing

Defendants' Motion to Compel Discovery Responses [Doc. # 90] ("Defendants' Motion to

Compel").  In addition, I respectfully recommend that the Motion to Enforce Lien [Doc. # 149]

be denied.

## I.  DEFENDANTS' MOTION FOR REASONABLE EXPENSES

The plaintiff's underlying case has been described by the parties and K&A as a straight-forward employment discrimination case alleging age, gender, and national origin discrimination.  In particular, the plaintiff summarized her claims as follows:

> Plaintiff was employed by Defendants as a Procurement Specialist in the U.S. Supply Chain Management for nearly 14 years.  At all times, Ms. Lopez performed her job more than satisfactorily, and was qualified for the position.  Ms. Lopez discovered that she was being paid less than her male counterparts for equal work, and was denied a promotion in 2008.  After making an internal complaint to address these discriminatory acts, Defendants commenced a concerted pattern and practice of discrimination and retaliation against her, which culminated in her termination in September 2009.

Scheduling Order [Doc. # 42] at p. 2.  In addition, the Amended Complaint contains claims alleging violations of the Equal Pay Act, ERISA, and the Family Medical Leave Act.  Amended Complaint [Doc. # 17] at pp. 9-10.

Unfortunately, the case has been marred from the outset by bickering among the lawyers.  For example, I refused to enter a blanket protective order when counsel were unable to agree on its terms, despite my best efforts to assist them.  In denying the request for a blanket protective order, I ruled:

> Under circumstances like these, where the parties cannot agree even as to basics, I do not anticipate that a blanket protective order can be effectively utilized or that it will facilitate orderly and efficient discovery.  Consequently, I will not enter one.  If necessary, the parties may seek protection by means of particularized protective orders, but in doing so they should bear in mind the mandates of Rules 26(c)(3) and 37(a)(5), Fed. R. Civ. P., concerning the award of attorneys fees and costs.

Order [Doc. # 57, filed 1/5/2012] at pp. 1-2 (internal citations omitted).

Within days of my warning, the defendants were required to file a Motion for Protective Order to Quash the Depositions of Defendants' Rule 30(b)(6) Representatives [Doc. # 58] (the "Motion to Quash").  I subsequently granted the Motion to Quash and awarded the defendants their reasonable expenses in bringing the Motion to Quash in the amount of $9,986.60.  Order [Doc. # 65] and Order [Doc. # 82].  In doing so, I found that the plaintiff's Rule 30(b)(6) deposition notices were blatantly improper and that plaintiff's counsel, Nina Kazazian, had taken unreasonable positions in an improper attempt to obtain priority of discovery.  Order [Doc. # 82] at p.1.

More discovery disputes followed.  On March 7, 2012, the plaintiff filed her Motion to Compel [Doc. # 83].  Two weeks later the defendants filed their Motion to Compel [Doc. # 90].  On May 1, 2012, I denied the Plaintiff's Motion to Compel [Doc. # 83] as withdrawn,  Order [Doc. # 121] at p. 1.  On May 30, 2012, I granted the Defendants' Motion to Compel [Doc. # 133] as confessed, Order [Doc. # 133] at p. 1, and required the plaintiff to "provide answers and responses to each of the defendants' pending interrogatories and requests for production, without objections. . . ."  Order [Doc. # 133] at pp. 1-2.

Under these circumstances, Rule 37(a)(5), Fed. R. Civ. P.,[1] requires that the defendants be awarded their reasonable expenses, including attorneys fees, unless (i) the defendants filed

---

[1]With respect to the Plaintiff's Motion to Compel [Doc. # 83], the award of reasonable expenses is governed by Fed. R. Civ. P. 37(a)(5)(B) because the motion was denied.  The award of reasonable expenses in connection with the Defendants' Motion to Compel [Doc. # 90] implicates Fed. R. Civ. P. 37(a)(5)(A) because that motion was granted or, alternatively, because the plaintiff confessed the motion and agreed that the defendants were entitled to the requested discovery before I ruled.  See Fed. R. Civ. P. 37(a)(5)(A) (providing that an award of reasonable expenses is required, absent other circumstances, "[i]f the motion is granted--or if the disclosure or requested discovery is provided after the motion was filed").

their Motion to Compel before attempting in good faith to resolve the dispute without judicial

action, or (ii) the plaintiff's positions in connection with the motions were substantially justified,

or (iii) the award of expenses would be unjust.

The award of reasonable expenses in this case is complicated, however, by the fact that

Ms. Kazazian, who filed Plaintiff's Motion to Compel [Doc. # 83] and whose conduct required

the filing of Defendants' Motion to Compel [Doc. # 90], was allowed to withdraw from the case

before those motions were fully briefed and before their resolution.  See Minute Order [Doc. #

107] (allowing Ms. Kazazian to withdraw).  Plaintiff's substitute counsel took an entirely

different approach to the case, withdrawing Plaintiff's Motion to Compel [Doc. # 83] and

confessing Defendants' Motion to Compel [Doc. # 90].  It might be argued and, indeed, Ms.

Kazazian did argue that under these circumstances she was not afforded "an opportunity to be

heard" on the issues as Fed. R. Civ. P. 37(a)(5)(A) and (B) command.  The argument is

unavailing, however.

In both Defendants' Response to Plaintiff's Motion to Compel [Doc. # 94] and

Defendants' Motion to Compel [Doc. # 90], the defendants sought an award of their reasonable

expenses.  I did not grant either of those requests.  Instead, I allowed the defendants, at their

option, to file a separate motion seeking an award of their attorneys fees in connection with the

discovery disputes.  Order [Doc. # 133].  The defendants filed that motion, which is the Motion

for Reasonable Expenses here at issue.  The Motion for Reasonable Expenses expressly states

that the defendants seek "their reasonable expenses against Plaintiff's former counsel, Nina H.

Kazazian . . ., in connection with two discovery motions," identifying the Plaintiff's Motion to

Compel [Doc. # 83] and the Defendants' Motion to Compel [Doc. # 90].  Motion for Reasonable

4

Expenses [Doc. # 139] at p. 1.  Subsequently, I directed Ms. Kazazian to respond to the Motion

for Reasonable Expenses by July 9, 2012, and I set that motion for hearing on July 19, 2012.

Minute Order [Doc. # 141].  The court's CM/ECF system confirms that the Minute Order [Doc.

# 141] was sent electronically to Ms. Kazazian on June 15, 2012, at two email addresses.

There can be no doubt that the Minute Order [Doc. # 141] was received by Ms. Kazazian

because on June 21, 2012, she requested an extension of time until August 8, 2012, to respond to

the Motion for Reasonable Expenses and that the July 19 hearing be vacated.  Motion for

Extension [Doc. # 143] at p. 1.  I granted the Motion for Extension [Doc. # 143], allowing Ms.

Kazazian until August 8 to respond to the Motion for Reasonable Expenses and resetting the

hearing to August 30, 2012.  Minute Order [Doc. # 145].  The court's CM/ECF system confirms

that this Minute Order [Doc. # 145] also was sent electronically to Ms. Kazazian at two email

addresses.  And, again, there can be no doubt that Ms. Kazazian received it because on August

10, 2012, she filed a Motion to Stay [Doc. # 156] requesting an order "STAYING the Motion for

fees and motion to enforce lien for at least two months, and VACATING the August 30, 2012

hearing."  Motion to Stay [Doc. # 156] at p. 3 (original capitalization).

I denied the Motion to Stay [Doc. # 156], finding that Ms. Kazazian was engaged in

courthouse shenanigans.  Order [Doc. # 176] at p. 2.  Those shenanigans include the following:

(1) Ms. Kazazian claimed to be unable to proceed on the motions pending in this court

due to personal and family health issues, among other things, but she was able to file an action

asserting related claims in the District Court of Douglas County, Colorado, Order [Doc. # 176] at

p. 2;

(2) Ms. Kazazian stated that she had "voluntarily deactivated" her license to practice law

"in Colorado" and was "not able to fulfill [her] professional responsibilities with respect to the litigation of these motions at this time. . . ."  Motion to Stay [Doc. # 156] at ¶5.  Ms. Kazazian failed to mention, however, that she continued to be a member of the New York bar and, consequently, remained a member in good standing of the bar of this court.[2]  Because she continued as a member of the bar of this court, Ms. Kazazian was able to issue subpoenas in connection with the August 30 hearing and to appear on behalf of K&A, an entity that can appear only through a licensed attorney;

(3)  Rather than responding to the Defendants' Motion for Reasonable Expenses on August 8 as ordered, see Minute Order [Doc. # 145], Ms. Kazazian filed a Motion to Stay [Doc. # 156] requesting further extensions until the eve of the August 30 hearing within which to file her briefs, Motion to Stay [Doc. # 156] at p. 3; and

(4)  Ms. Kazazian sought repeatedly to vacate or postpone the August 30 hearing.  See, e.g., Motion to Stay [Doc. # 156, filed 8/10/2012] at p. 3; Motion for Extension [Doc. # 166, filed 8/24/2012] at ¶5; Motion for Reconsideration [Doc. # 177, filed 8/28/2012] at p. 6; and Motion to Withdraw Motion to Enforce Lien [Doc. # 181, filed 8/29/2012] at ¶6.

---

[2]As a member of the Colorado bar, Ms. Kazazian could deactivate her license in either of two ways.  First, an attorney "who has retired or is not engaged in practice" may file a notice indicating that "he or she desires to transfer to inactive status and discontinue the practice of law."  Colo. R. Civ. P. 227(6)(a).  This, apparently, is the inactive status Ms. Kazazian invoked (although, contrary to the spirit of the rule, she continued to practice law in this court as a result of her active membership in the New York bar).  Alternatively, Colo. R. Civ. P. 251.23(a) provides that "[w]here it is shown that an attorney is unable to fulfill professional responsibilities competently because of physical, mental or emotional infirmity or illness," as Ms. Kazazian claimed to be, see Motion to Stay [Doc. # 156] at ¶5, "the attorney shall be transferred to disability inactive status."  Significantly, "[a] member of this court's bar who is placed on disability inactive status by any state or federal court is prohibited from practicing before this court during such status."  D.C.COLO.LCivR 83.5K(5).

6

Although Ms. Kazazian had more than two months from the filing of Defendants' Motion for Reasonable Expenses [Doc. # 139], she failed to file a timely response.  Instead, on August 29, 2012, at 3:22 p.m. (the afternoon before the hearing on Defendants' Motion for Reasonable Expenses), Ms. Kazazian filed a Response to Defendants' Motion for Fees [Doc. # 186] (the "Response").  The Response was untimely, but no party moved to exclude it, and I have considered it in connection with ruling on Defendants' Motion for Reasonable Expenses.  Subsequently, on August 30, 2012, at 11:22 p.m., following the first day of the two day hearing, Ms. Kazazian filed an Amended Response to Defendants' Motion for Fees [Doc. # 189] (the "Amended Response").  The Amended Response includes a 15 page brief, a five page affidavit by Ms. Kazazian (who had already completed her testimony of approximately two hours during the August 30 hearing), and 134 pages of exhibits.  Amended Response [Doc. # 189].  I disallowed the Amended Response as untimely.

Importantly, I conducted a hearing on pending motions, including Defendants' Motion for Reasonable Expenses, which consumed approximately one-and-one-half days.  Ms. Kazazian was allowed to present evidence at the hearing and to make arguments.  In view of all of this, it cannot reasonably be said that Ms. Kazazian was not afforded an opportunity to be heard.

## A.  Defendants' Motion to Compel

Turning to the merits of Defendants' Motion for Reasonable Expenses [Doc. # 139], I find that the defendants made a good faith attempt to resolve the dispute underlying the Defendants' Motion to Compel [Doc. # 90] prior to filing it.  Specifically, the plaintiff's initial responses to defendants' discovery were served on February 14, 2012.  Plaintiff's Responses [Doc. # 90-2].  On February 21, 2012, defense counsel sent Ms. Kazazian a three page letter

[Doc. # 90-3] detailing deficiencies in the Plaintiff's Responses.  Thereafter, counsel exchanged numerous emails and other correspondence addressing inadequacies in the Plaintiff's Responses [Doc. ## 90-4 through 90-7], eventually culminating on March 5, 2012, with Plaintiff's Supplemental Responses [Doc. # 90-8].  On March 8, 9, and 18, 2012, defense counsel sent detailed emails to Ms. Kazazian [Doc. ## 90-10; 90-11; 90-14] discussing the continuing deficiencies.  When those efforts were unsuccessful, defendants' filed their Motion to Compel [Doc. # 90] on March 21, 2012.

I find also that the positions taken by Ms. Kazazian in responding to the defendants' discovery requests were not substantially justified.  For example, despite the mandate of Rule 33(b)(5), the plaintiff's responses and supplemental responses to the defendants' interrogatories are signed by Ms. Kazazian and not by the plaintiff.  Plaintiff's Responses [Doc. # 90-2] at p. 16; Plaintiff's Supplemental Responses [Doc. # 90-8] at p. 22.

In addition, and again by way of example, defendants' Interrogatory No. 1 asked the plaintiff to "detail all facts, including in your description the identity of all documents and communications, that support your allegation that Your Termination was motivated in whole or in part by your age, gender, or national origin."  Plaintiff's Responses [Doc. # 90-2] at p. 4.  No substantive response was provided.  Instead, Ms. Kazazian asserted an objection which incorporated "General Objections 1, 2, 3, 7, 8, and 9."  Id.  Those general objections are:

> 1.  Plaintiff responds in accordance with the applicable provisions of the Federal and Local Rules of Civil Procedure.  Plaintiff objects to any purported definitions, instructions, requirement, or requests contained in Defendants' Requests that are in conflict with those provisions of this court's Rules.
>
> 2.  Plaintiff objects to the Discovery Requests to the extent that they seek information protected by the attorney-client privilege or

work product doctrine.

3. Plaintiff objects to these requests, to the extent that they call for the production of information or documents, which is in the custody, possession, or control of the Defendants or third parties, or is equally accessible to the Defendants.

&ast; &ast; &ast;

7. Plaintiff objects to the Interrogatories and to each individual Interrogatory, on the basis that the Interrogatories, including discrete subparts and embedded requests for production, collectively exceed the number of interrogatories permitted under the Scheduling Order entered in this action on November 7, 2011 [42].

8. Plaintiff objects to the Requests for Production, and to each individual Request, on the basis that the RFPs, including discrete subparts and requests for production contained in the Interrogatories, collectively exceed the number of RFPs permitted under the Scheduling Order entered in this action on November 7, 2011 [42].

9. Because the Interrogatories and Requests for Production exceed the number of requests allowed by the Scheduling Order, in order to preserve their objections on that that [sic] basis Plaintiff will not respond substantively to individual Interrogatories or Requests for Production.

Id. at pp. 1-2. The plaintiff's Supplemental Response to Interrogatory No. 1 continued to assert the general objections, but added:

Without waiving these objections, and pursuant to Fed. R. Civ. P. 33(b), plaintiff incorporates herein by reference the documents and information she provided in connection with the CCRD charge, which have previously been provided with Plaintiff's Initial Disclosures.

Supplemental Responses [Doc. # 90-8] at p. 4.

Similarly, defendants' Interrogatory No. 2 asked the plaintiff to "detail all facts, including in your description the identity of all documents and communications, that show that David Bean intentionally discriminated or retaliated against you." Plaintiff's Responses [Doc. #

9

90-2] at p. 4. Ms. Kazazian asserted General Objections 1, 2, 3, 7, 8, and 9 in response to this

interrogatory, but added:

> In addition, Interrogatory No. 2 is vague and ambiguous. Plaintiff
> is unable to answer this Interrogatory as written at this time, but
> will amend and supplement this response in accordance with Fed.
> R. Civ. P. 26.

Id. The Supplemental Response contained little more, reasserting the general objections and

stating:

> Plaintiff is unable to answer this Interrogatory as written at this
> time, because Defendants have not produced documents and
> information yet in discovery, but will amend and supplement this
> response in accordance with Fed. R. Civ. P. 26.
>
> Without waiving these objections, and pursuant to Fed. R. Civ. P.
> 33(b), plaintiff incorporates herein by reference the documents and
> information she provided in connection with the CCRD charge,
> which have previously been provided to Defendants. An
> additional copy of those documents was also provided with
> Plaintiff's Initial Disclosures.

Supplemental Response [Doc. # 90-8] at p. 5 (emphasis added).

These responses, and most of the others, are evasive and obviously inadequate. First, the

plaintiff was required to provide answers, in writing and under oath, to these factual inquiries.

Fed. R. Civ. P. 33(b)(3). Ms. Kazazian's reference to "documents and information . . . provided

in connection with the CCRD charge" is not a full answer. Nor may Ms. Kazazian attempt to

obtain priority of discovery by refusing to answer the defendants' interrogatories "because

Defendants have not produced documents and information yet in discovery." To the contrary,

the defendants are entitled to the plaintiff's factual answers to these obviously relevant requests,

based on the plaintiff's knowledge as it existed at the time of the response and without regard to

whether the defendants had provided (or been required to provide) discovery responses of their

own.  I had previously imposed attorneys fees against Ms. Kazazian for a similar improper attempt to obtain priority of discovery.  Order [Doc. # 82] at p. 1.

Finally, I find that an award of  the defendants' reasonable expenses in bringing Defendants' Motion to Compel [Doc. # 90] would not be unjust.  Ms. Kazazian argued that I should take into account her inability to pay in deciding whether to make an award of reasonable expenses under Rule 37(a)(5), citing Miller v. Los Angeles County Bd. of Ed., 827 F.2d 617, 621 (9th Cir. 1987).  Response [Doc. # 186] at p. 11.  I do not agree.  First, Miller is not a decision of the Tenth Circuit Court of Appeals and is not controlling authority.  Second, Miller concerned awards of attorneys fees against losing parties in cases involving claims under 42 U.S.C. §§ 1981, 1983 and Title VII.  Here, I am concerned with the award of attorneys fees against learned and experienced counsel pursuant to Rule 37.  Finally, although Ms. Kazazian has argued that she is unable to pay an award of reasonable expenses, she has offered no evidence to support that argument.

I find that the defendants are entitled to an award of their reasonable expenses, including attorneys fees, incurred in bringing Defendants' Motion to Compel [Doc. # 90].  In addition, I find that it was the conduct of Ms. Kazazian, and not the plaintiff, that necessitated the filing of Defendants' Motion to Compel.  Consequently, the award is made against Ms. Kazazian and Kazazian & Associates LLC, and not against the plaintiff.

**B.  Plaintiff's Motion to Compel**

Pursuant to Rule 37(a)(5)(B), reasonable expenses should be awarded to the prevailing

party if a motion to compel is denied unless the motion was substantially justified or such an

award would be unjust.

I find that the Plaintiff's Motion to Compel [Doc. # 83] was not substantially justified.  In

particular, the defendants certainly are correct when they assert that "the Interrogatories,

including discrete subparts, collectively exceed the number of Interrogatories permitted under

the Scheduling Order entered in this action on November 7, 2011," see, e.g., Defendants'

Objections [Doc. # 83-3] at p. 5, which were limited to 25.  This is made clear simply by looking

at plaintiff's Interrogatory No. 22 which requests:

> Identify each denial of a material allegation and each affirmative
> defense in your pleading, and for each:
>
> (a)  state all facts upon which you base the denial or affirmative
> defense;
>
> (b)  state the names, **ADDRESSES**, and telephone numbers of all
> **PERSONS** who have knowledge of those facts;
>
> (c)  identify all **DOCUMENTS** and other tangible items which
> support your denial or affirmative defense, and state the name,
> **ADDRESS**, and telephone number of the **PERSON** who has each
> **DOCUMENT**.

Id. at p 22.

In Kovacs v. Hershey Co., 2006 WL 1980291 (D. Colo. July 13, 2006), *rev'd in part on*

*other grounds*, 2006 WL 2781591 (D. Colo. Sept. 6, 2006), I held that an interrogatory seeking

"all facts and documents you contend support each of the 'Affirmative Defenses' identified in

pages 11 through 14 in the 'Answer of Defendant Hershey Foods Corporation'" constituted 18

12

separate questions--one for each affirmative defense asserted.  Similarly, plaintiff's Interrogatory

No. 2 constitutes at least 12 separate interrogatories--one for each of the 12 affirmative defenses

asserted in the Amended Answer [Doc. # 37].  The interrogatory is much broader than that, of

course, because it also requires the defendants to "state all facts upon which [they deny] a

material allegation" contained in the Amended Complaint.  The Amended Answer [Doc. # 37]

contains 41 outright denials, and many other instances where some part of an allegation is

denied.

Ms. Kazazian's assertion that she agreed to withdraw the multi-part interrogatories to

which the defendants objected is simply not correct.  To the contrary, Ms. Kazazian withdrew

only "the last Interrogatory. . . ."  Kazazian Letter [Doc. # 83-2] at p. 2.  Without withdrawing

the objectionable interrogatories, Ms. Kazazian demanded that "[i]n order to limit the issues on

this dispute, please fully respond to the interrogatories that you did *not* assert contain subparts,

*e.g. Interrogatories Nos. 1, 5, 7, 8, 9, 11, 14, 15, 16, 18, 20, and 21* by March 6, 2012."  Id.

(original italics).

I find also that it would not be unjust to award the defendants their reasonable expenses

in resisting Plaintiff's Motion to Compel [Doc. # 83].

Once again, it was the conduct of Ms. Kazazian which required the defendants to respond

to the Plaintiff's Motion to Compel.  Reasonable expenses are awarded against Ms. Kazazian

and Kazazian & Associates LLC,  and not against the plaintiff.

### C.  The Reasonable Expenses Awarded

In calculating a reasonable attorneys fee, I apply the lodestar principles stated in

Robinson v. City of Edmond, 160 F.3d 1275, 1281 (10th Cir. 1998).  "The lodestar calculation is

the product of the number of attorney hours reasonably expended and a reasonable hourly rate." Id. (internal quotations and citation omitted).

The defendants have submitted with the Motion for Reasonable Expenses the Affidavit of Mark T. Barnes [Doc. #139-2] which includes a detailed description of the services rendered, the amount of time spent, the hourly rate, the total amount claimed, and a summary of the qualifications and experience of each lawyer, all as required by D.C.COLO.LCivR 54.3.  The defendants seek fees of $23,640.75, based on a total of 81.9 hours billed by three lawyers.  Mr. Barnes, the partner in charge of the case, billed 36.7 hours to the disputed matters at an hourly rate ranging from $364.50 to $378.00.  Michael Hoke, a fifth year associate, billed 23.6 hours at an hourly rate ranging from $220.50 to $238.50.  And Martine Wells, a second year associate, billed 21.6 hours at an hourly rate ranging from $180.00 to $198.00.

I agree with arguments made by Ms. Kazazian that 81.9 hours is an unreasonably large amount of time for the preparation of the Defendants' Motion to Compel [Doc. # 90] and resisting Plaintiff's Motion to Compel [Doc. # 83].  I note, however, that it is obvious from the correspondence between counsel that Ms. Kazazian acted unreasonably throughout her representation of the plaintiff.

The Supreme Court has instructed in connection with the determination of attorneys fee awards:

> [T]rial courts need not, and indeed should not, become green eye-shade accountants.  The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection.  So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.

Fox v. Vice, 131 S. Ct. 2205, 2216 (2011).

My review of all of the evidence presented in connection with the two underlying discovery motions and Defendants' Motion for Reasonable Expenses is that the work could have been completed in 40 hours.  I cannot criticize the way in which the work was distributed, with Mr. Barnes performing approximately 45%; Mr. Hoke performing approximately 29%; and Ms. Wells performing approximately 26%.  In addition, I find that the hourly rates charged by each of defendants' lawyers are reasonable.  Praseuth v. Rubbermaid, Inc., 406 F.3d 1245, 1259 (10th Cir. 2005)(approving the district court's determination of a reasonable hourly rate by "relying on its knowledge of rates of lawyers with comparable skill and experience" practicing in the applicable community).

Utilizing the lower billing rate of each lawyer, and allocating 40 hours among the three lawyers in the same percentages as the time billed, results in the following calculation:

Mr. Barnes:  45% x 40 hrs. = 18.0 hrs. x 364.50 = $6,561.00;

Mr. Hoke:   29% x 40 hrs. = 11.6 hrs. x 220.50 = $ 2,557.80; and

Ms. Wells:  26% x 40 hrs. =  10.4 hrs. x 180.00 = $1,872.00.

I award the defendants their reasonable expenses, including attorneys fees, in the amount of $10,990.80.  The award is made against Nina Kazazian and Kazazian & Associates LLC, and not against the plaintiff.

## II.  SECOND (AMENDED) MOTION TO ENFORCE ATTORNEY'S LIEN

K&A first asserted an attorneys lien on May 3, 2012, by filing a Notice of Lien [Doc. # 122].  The Notice of Lien [Doc. # 122] claimed an "unpaid amount of $5,798.63."  Id.  On July 20, 2012, K&A filed its Second (Reasserted) Notice of Lien [Doc. # 148] (the "Second Notice of Lien").  The Second Notice of Lien [Doc. # 148] claimed a "total unpaid balance of the hourly

15

fees, costs, and interest due" to K&A of $11,095.37, plus a right under a contingency agreement

to 15% of the settlement reached between the plaintiff and defendants. Id. at p. 2.  On July 23,

2012, K&A filed its Second (Amended) Motion to Enforce Attorney's Lien [Doc. # 149] (the

"Motion to Enforce Lien").  Finally, on August 27, 2012, K&A filed its Amended Second Notice

of Lien Under C.R.S. §12-5-119 and 120 [Doc. # 170].

On the eve of the hearing on the Motion to Enforce Lien, K&A filed a Motion to

Withdraw Motion to Enforce [Doc. # 181].  I denied the Motion to Withdraw Motion to Enforce

[Doc. # 181] because the determination of the Motion to Enforce Lien [Doc. # 149] in this court

"promotes judicial economy, because the judge who has heard the case is in a better position to

determine the reasonableness of the charges/fees and the means to enforce the lien."  Tami D.

Cowden and Serge L. Herscovici, *Perfection and Enforcement of Attorney's Liens In Colorado*,

26-MAR COLO. LAW. 57, 59 (1997).

K&A and the plaintiff entered into a Blended Value-Added Contingent Fee Agreement

on January 3, 2011 [Doc. # 122-1] (the "Fee Agreement").  Under the terms of the Fee

Agreement, K&A is entitled to the following compensation:

> (4) Attorneys' Fees:  The fee for Attorney's representation of the
> Client in this matter shall be the greater of a Blended Fee, or an
> award of attorney fees, as follows:
>
> (a) Time Based:  billed for the time actually spent on the matter by
> Nina Kazazian at *$225 per hour*, which is a discount of the
> Attorney's regular hourly rates (currently $325 per hour).  The fee
> for work done by other attorneys, paralegals, and Associated
> Counsel will be billed at their hourly rate (see attached *Disclosure
> Statement*), with Client's approval for professional fees in excess
> of $225 per hour, *plus*
>
> (b) Reduced Contingent Fee:  fifteen percent (15%) of the gross
> amounts recovered before payment of costs and any fees awarded

16

> to the opposing party, whether recovered by suit(s), settlement or otherwise (the "Contingent Fee Amount"); *or*
>
> (c)  <u>An Award of Attorney Fees</u>, if such award (by the Court or as part of a settlement) is greater than the sum of (a) and (b) above.

Fee Agreement [Doc. # 122-1 at p. 1 (original italics). K&A seeks fees pursuant to paragraph (4)(a)-(b) of the Fee Agreement.

This action was filed on January 12, 2011. Complaint [Doc. # 1]. The defendants moved to dismiss the original complaint, Partial Motion to Dismiss [Doc. # 11], prompting K&A to seek leave to file an amended complaint. Motion for Leave to Amend [Doc. # 15]. The Amended Complaint [Doc. # 17] was filed on April 27, 2011. The defendants filed a Partial Motion to Dismiss Amended Complaint [Doc. # 20] which was granted in part and denied in part by the district judge. Order [Doc. # 29]. A scheduling conference was held and a Scheduling Order was entered [Doc. # 42]. Counsel were unable to agree on the basic terms of a blanket protective order, and I refused to enter one. Order [Doc. # 57].

Then the discovery disputes began. I granted Defendants' Motion to Quash [Doc. # 58] and awarded the defendants their reasonable expenses pursuant to Fed. R. Civ. P. 26(c)(3), Order [Doc. # 65], finding that the Rule 30(b)(6) deposition notices were blatantly improper and the Ms. Kazazian had "taken unreasonable positions on discovery matters in an improper attempt to obtain priority of discovery." Order [Doc. # 82]. The Plaintiff's Motion to Compel [Doc. # 83] was filed on March 7, 2012, followed by the Defendants' Motion to Compel [Doc. # 90] on March 21, 2012. In the meantime, an unsuccessful settlement conference was held on March 15, 2012. Minute Entry [Doc. # 86].

One week after the unsuccessful settlement conference, Ms. Kazazian moved to withdraw

as plaintiff's counsel, stating:

> 1. Pursuant to D.C.COLO.LCivR 83.3(D), undersigned reasonably requests to withdraw as counsel for Plaintiff, for the following reasons:
>
> a. Due to extenuating personal circumstances, undersigned is unable to continue as counsel of record in this matter.
>
> b. The representation has resulted in an unreasonable financial burden on the lawyer, although Plaintiff has paid in accordance with her agreement.

Combined *Forthwith* Motion and Notice of Request to Withdraw as Attorney-of-Record for Plaintiff Brenda Lopez [Doc. # 92] (the "Motion to Withdraw").  In her email to the plaintiff, Ms. Kazazian explained that she was seeking to withdraw as counsel "[d]ue to extenuating circumstances in my personal life. . . ."  Email, Exh. 9.  Ms. Kazazian was allowed to withdraw by a Minute Order [Doc. # 107] on May 11, 2012.

I look to state law to determine the existence and validity of an attorney's lien.  Out of Line Sports, Inc. v. Rollerblade, Inc., 213 F.3d 500, 502 (10th Cir. 2000).  Attorney's liens in Colorado are controlled by statute.  Cowden & Herscovici, 26 MAR COLO. LAW. at 57. Common law attorney's liens are not recognized, and "no attorney's lien exists apart from statute."  Id.; In re Rosenberg, 690 P.2d 1293, 1294 (Colo. App. 1984).  A proceeding to establish an attorney's lien is equitable in nature, and there is no right to a jury trial in such proceedings.  In re Rosenberg, 690 P.2d at 1294.

Colorado recognizes two kinds of attorney's liens: charging liens and retaining liens.  At issue here is a charging lien.  The Colorado charging lien, codified at section 12-5-119, C.R.S., provides in relevant part:

> All attorneys- and counselors-at-law shall have a lien on any

18

> money, property, choses in action, or claims and demands in their hands, on any judgment they may have obtained or assisted in obtaining, in whole or in part, and on any and all claims and demands in suit for any fees or balance of fees due or to become due from any client.  In the case of demands in suit and in the case of judgments obtained in whole or in part by any attorney, such attorney may file, with the clerk of the court wherein such cause is pending, notice of his claim as lienor, setting forth specifically the agreement of compensation between such attorney and his client, which notice, duly entered of record, shall be notice to all persons and to all parties, including the judgment creditor, to all persons in the case against whom a demand exists, and to all persons claiming by, through, or under any person having a demand in suit or having obtained a judgment that the attorney whose appearance is thus entered has a first lien on such demand in suit or on such judgment for the amount of his fees.

In addition, a charging lien can be enforced against settlement funds, to the extent the client has an interest in those funds.  MCI Constructors, Inc. v. District Court, 799 P.2d 40, 43-44 (Colo. 1990).

An attorney's lien must be reduced to judgment prior to enforcement.  Cowden & Herscovici, 26 MAR COLO. LAW. at 59.  Once the validity of the lien has been determined and the lien is reduced to a judgment, the judgment may be enforced in the same manner as any other.  Id.

An attorney is entitled to a charging lien "to the extent of his reasonable fees, remaining due and unpaid, for professional services rendered in obtaining the judgment [or settlement]." People ex rel. MacFarlane v. Harthun, 581 P.2d 716, 718 (Colo. 1978).  "[T]he lien is limited to a reasonable amount even if the parties agreed to a larger amount."  Dietz v. University of Denver, 2011 WL 2559829 *6 (D. Colo. June 28, 2011)(applying Colorado law).  The lien claimant, here K&A, has the burden of proof with respect to its claim for an attorney's lien.  Bd. of County Comm. v. Quaintance, 183 P.2d 569, 571 (Colo. 1947).

19

The discrimination case between plaintiff and the defendants has been settled, but the settlement has not been performed due to the pendency of this attorney's lien issue.  An attorney's lien "is chargeable against any person who, at the time notice of intent to claim a lien is given, holds monies or property which become proceeds of a judgment to be entered in the future" or a settlement of the claim.  In re Marriage of Smith, 687 P.2d 519, 520 (Colo. App. 1984).  The defendants, defense counsel, and plaintiff's substitute counsel all have notice of K&A's Notice of Lien.  The defendants, prudently, have refused to release the settlement proceeds while K&A's lien status remains pending, under the threat of having to make a second payment to K&A to satisfy the attorney's lien judgment, if any.

### A.  Time-Based Fees

K&A presented very little evidence concerning the amount or reasonableness of the fees claimed.  The Second Notice of Lien [Doc. # 148] claims that $11,095.37 is owed to K&A for "hourly fees, costs, and interest," id. at p. 2, but there is no indication as to how that balance due was calculated.

Invoices from K&A to the plaintiff  were introduced into evidence [Exh. P-15] at the hearing, which show the following:

| Invoice No. | Date | Total Billed |
|:-----------:|:----:|------------:|
| 2439 | 02/04/12 | $1,460.08 |
| 2449 | 03/14/12 | $3,690.00 |
| 2453 | 04/10/12 | $7,560.00 |
| 2464 | 05/03/12 | $617.00 |
| 2466 | 05/10/12 | $487.50 |
| 2480 | 06/27/12 | $4,582.50 |
| 2484 | 08/01/12 | $552.50 |
| | | **$18,949.58** |

The summary of the plaintiff's account with K&A also was introduced into evidence [Exh. 2], and it shows that between February 4, 2012, and August 3, 2012, the plaintiff paid K&A a total of $12,669.21.  Based on the evidence before me, the maximum balance due from the plaintiff to K&A for time-based fees cannot exceed $6,280.37.

A careful review of the invoices [Exh. P-15] shows that the vast majority of the fees billed to the plaintiff were not reasonable, were not rendered in obtaining the settlement, or both. In particular, none of the time spent in connection with resisting the Motion to Quash [Doc. # 58], preparing Plaintiff's Motion to Compel [Doc. #83], or resisting Defendants' Motion to Compel [Doc. # 90]--including the time preparing discovery requests, preparing discovery responses, or conferring with opposing counsel--was reasonably expended in obtaining the settlement because I have ruled that the positions taken by Ms. Kazazian in connection with the discovery and those motions were not substantially justified.

K&A billed the plaintiff for time spent resisting my award of reasonable expenses against Ms. Kazazian personally in connection with the Motion to Quash.  None of that time was

reasonably expended in obtaining the settlement.

K&A billed the plaintiff for time spent in connection with Ms. Kazazian's motion to withdraw as plaintiff's counsel.  K&A also billed for time spent, after the Motion to Withdraw was filed, requesting extensions of time to file briefs and asking the court to vacate hearings, none of which can be said to have been reasonably expended in obtaining the settlement.

All of the time billed by K&A after May 2, 2012, is at Ms. Kazazian's higher rate of $325.00 per hour and involves her attempts to assert the attorney's lien and collect the fees claimed.  None of that time was reasonably expended in obtaining the settlement.

Of the $18,949.58 billed by K&A to the plaintiff after February 4, 2012, I find that $14,972.50 was not reasonably expended in obtaining the settlement and was of no benefit or value to the plaintiff.  The plaintiff has paid $12,669.21 to K&A since February 4, 2012, substantially in excess of the remaining $3,977.58 billed to the plaintiff and which may have been of some benefit in obtaining the settlement.  As a result, I find that the plaintiff owes K&A nothing for time-based fees.

### B.  The Contingency Fee

K&A also seeks to enforce an attorney's lien against the settlement proceeds based on a 15% contingency fee.  The plaintiff argues that a contingency fee is unenforceable where, as here, Ms. Kazazian voluntarily withdrew from her representation "[d]ue to extenuating personal circumstances,"  Motion to Withdraw [Doc. # 92], and the Fee Agreement fails to provide for any contingency fee payment under these circumstances.  The plaintiff relies on Elliott v. Joyce, 889 P.2d 43, 46 (Colo. 1994), in support of her argument.

Chapter 23.3 of the Colorado Rules of Civil Procedure contains the Rules Governing

22

Contingent Fees.  Rule 1 requires that contingency fee agreements be in writing.  Colo. R. Civ.

P. ch. 23.3, Rule 1; Mullens v. Hansel-Henderson, 65 P.3d 992, 995 (Colo. 2002).  Rule 5

provides, among other things, that a contingency fee agreement must contain "a statement of the

contingency upon which the client is to be liable to pay compensation otherwise than from

amounts collected for him by the attorney. . . ."  Colo. R. Civ. P. ch. 23.3, Rule 5.  Rule 6

commands that "[n]o contingent fee shall be enforceable by the involved attorney unless there

has been substantial compliance with all of the provisions of Chapter 23.3."  Colo. R. Civ. P. ch.

23.3, Rule 6.  The Colorado Supreme Court discussed the purposes and interplay of these rules

in Dudding v. Norton Frickey & Asso., 11 P.3d 441, 445-46 (Colo. 2000):

> An attorney-client relationship relies on trust and confidence
> between the client and the attorney.  This distinguishes the
> attorney-client relationship from other business relationships. . . .
>
> Further, this court requires parties to put contingent fee agreements
> in writing and to satisfy the requirements of Chapter 23.3 of the
> Rules of Civil Procedure Governing Contingent Fees.  Rule 5
> identifies the information that each contingent fee agreement must
> contain.  Rule 6 provides that no contingent fee agreement shall be
> enforceable unless it substantially complies with the Rules.
>
> The Rules assure that clients will know the terms and conditions of
> payment when contracting for the attorney's services.  Hence, an
> attorney may seek a contingent fee from his client only in
> accordance with a valid agreement.

(Internal citations omitted.)

In Elliott v. Joyce, 889 P.2d 43 (Colo. 1994), the Colorado Supreme Court held that a

contingency fee agreement was unenforceable because it "did not contain a statement indicating

the client would be liable to pay compensation to the attorney under the particular circumstances

by which the attorney-client relationship was terminated. . . ."  Id. at 43.  In that case, the

contingency fee agreement specified only that the client would be responsible for the payment of

fees, other than those collected for the client by the attorney, if the client terminated the fee

agreement by notifying the attorney in writing.  Id. at 44.  The contingency fee agreement was

not terminated by the client, however, but voluntarily by the attorney.  Id. at 44-45.  The

Colorado high court explained its ruling as follows:

> [O]ther than a recovery for amounts collected by Elliott [the
> former lawyer] (a contingency not applicable due to Elliott's
> withdrawal), the agreement otherwise only provides for client
> liability when the client terminates the agreement.  Mutual
> abandonment or voluntary withdrawal by the attorney is not a
> contingency expressly provided or contemplated by the express
> terms of the fee agreement.  Thus, although it specifically provides
> that the client must pay the attorney a fee based upon time and
> effort for services rendered if the *client* terminates the fee
> agreement, the fee agreement is silent as to liability when either
> Elliott unilaterally terminates the agreement or Elliott and Joyce
> mutually terminate the agreement.  Hence, pursuant to Rule 6, by
> failing to expressly include a contingency as required to be set
> forth by Rule 5(d), Elliott cannot enforce payment by Joyce.

Id. at 46 (original emphasis).

Similarly here, the Fee Agreement [Doc. # 148-1] provides only:

> In the event that Client terminates this Agreement, without
> wrongful conduct by the Attorney which would cause Attorney to
> forfeit any fee, or the Attorney justifiably withdraws from the
> representation of Client (for example, for non-payment of amounts
> owed under this Agreement), the Attorney reserves the right to ask
> the court or other tribunal to require the Client to pay the Attorney
> a fee based upon the reasonable value ro the services provided by
> the Attorney as of the date fo such termination, which may exceed
> the Fee Deposit.

Id. at ¶4.  The Fee Agreement fails to make any provision for the payment of a fee where Ms.

Kazazian unilaterally and due to "extenuating personal circumstances" voluntarily withdraws

from the attorney-client relationship.

I agree with the plaintiff that Rules 1, 5(d), and 6 of the Rules Governing Contingent Fees and the cases construing and applying those rules, including particularly <u>Elliott v. Joyce</u>, render the contingency fee provision of the Fee Agreement unenforceable.

## III.  CONCLUSION

IT IS ORDERED:

(1)     Defendants' Motion for Reasonable Expenses [Doc. # 139] is GRANTED;

(2)     The defendants are awarded their reasonable expenses, including attorneys fees, in the amount of $10,990.80; and

(3)     The award is against Nina Kazazian and Kazazian & Associates LLC, and not against the plaintiff.

I respectfully RECOMMEND:

(1)     The Second (Amended) Motion to Enforce Attorney's Lien [Doc. # 149] be DENIED; and

(2)     Judgement on the Notice of Lien [Doc. # 122]; Second (Reasserted) Notice of Lien [Doc. # 148]; and Amended Second Notice of Lien Under C.R.S. §§12-5-119 and 120 [Doc. # 170] be entered in favor of the plaintiff and against the lien claimant, and the liens be dismissed with prejudice.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), specific written objections to this recommendation must be filed and served within 14 days after service of the recommendation.   Failure to file and serve specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); <u>Thomas v. Arn</u>, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.  <u>Makin v.</u>

Colorado Dept. of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  Objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

     Dated September 7, 2012.

                                  BY THE COURT:

                                    s/ Boyd N. Boland
                                  United States Magistrate Judge